UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BELINDA DE GAUDEMAR, ANTHONY HOFFMANN, SUSAN SCHOENFELD, NANCY PASCAL, and MICHAEL CORBETT,<br><br>                   Plaintiffs,<br><br>    v.<br><br>PETER S. KOSINSKI, in his official capacity as Co-Chair of the State Board of Elections; DOUGLAS A. KELLNER, in his official capacity as Co-Chair of the State Board of Elections; ANDREW J. SPANO, in his official capacity as Commissioner of the State Board of Elections; ANTHONY J. CASALE, in his official capacity as Commissioner of the State Board of Elections; TODD D. VALENTINE, in his official capacity as Co-Executive Director of the State Board of Elections; and KRISTEN ZEBROWSKI-STAVISKY, in her official capacity as Co-Executive Director of the State Board of Elections,<br><br>                   Defendants. | Case No. 22 Civ. 3534<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**Three-Judge Court Requested** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Belinda de Gaudemar, Anthony Hoffmann, Susan Schoenfeld, Nancy Pascal, and Michael Corbett, by and through their undersigned counsel, file this Complaint for Declaratory and Injunctive Relief against Defendants Peter S. Kosinski, Douglas A. Kellner, Andrew J. Spano, Anthony Casale, Todd D. Valentine, and Kristen Zebrowski-Stavisky, in their official capacities as members of the New York State Board of Elections, and allege as follows:

### NATURE OF THE ACTION

1.      Under an existing federal court order, New York must conduct its congressional primary on June 28, 2022. This date is not negotiable: Ten years ago, the Department of Justice

secured a permanent injunction against the State of New York for its repeated violations of the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) and the Military and Overseas Voter Empowerment (MOVE) Act. To ensure that New York would finally meet its obligation to send ballots to military and overseas voters with adequate time for those voters to return them, the Northern District of New York entered a permanent injunction ordering the state to conduct its non-presidential federal primary on "the fourth Tuesday in June" in subsequent even-numbered years. *See* Ex. 1, *United States v. New York*, 1:10-cv-01214, ECF No. 59 (Jan. 27, 2012). In 2022, that date is June 28th, just eight weeks away.

2.      Of course, New York must redraw its congressional boundaries before it can conduct a congressional primary—first, to remedy malapportionment in the existing districts, and second, to account for the fact that New York will only send 26 Representatives to the next Congress, one fewer than New York was allocated in the last decade.

3.      As of the date of this filing, New York is in no position to meet its obligation to redraw its congressional boundaries in time to conduct its congressional primary on June 28. Nor is it even trying to do so: The Steuben County Supreme Court that has been tasked with redrawing New York's congressional boundaries for the next decade has purportedly moved the congressional primary to August 23, and does not intend to finish its process until May 20—more than two weeks after primary ballots should be certified, and a full week after UOCAVA ballots must be sent to military and overseas voters under a June 28 primary schedule. The Steuben County Court's "process" for drawing a new congressional plan, meanwhile, consists of holding a single-day hearing in predominantly white Bath, New York, which is located approximately five hours from New York City and is inaccessible by public transportation.

4.     Because the State of New York has failed to timely redistrict its congressional boundaries, the obligation to implement new congressional redistricting plans for the State now falls to this court.

5.     This obligation is serious: barring the swift adoption of an appropriate single-member congressional plan for the State of New York by this court, the state is obligated under 2 U.S.C. § 2a(c)(5) to hold at-large congressional elections—the "last-resort remedy" when a state has lost a congressional district, has failed to timely redistrict, and no state or federal court has redistricted the state in time for elections. *Branch v. Smith*, 538 U.S. 254, 275 (2003).

6.     This court can avoid such an outcome by adopting a congressional plan for New York this week, in time for the New York State Board of Elections to certify the primary ballot, for UOCAVA ballots to be mailed no later than May 14, and for New York to conduct its primary on June 28, 2022, as it is federally mandated to do.

7.     Because this court has a short window to implement such a plan—certainly not enough time to retain a special master and craft its own—this court should adopt the plan passed by the New York Legislature and signed by Governor Hochul on February 3, 2022. It is the plan that all of New York's congressional candidates campaigned under, gathered petitions under, and are prepared to run under. It is also the plan that New York state courts were prepared to use for the State's 2022 elections until just recently to ensure it could conduct timely elections.

8.     New York's decision to wait several more weeks before adopting a new congressional plan as its federally mandated June 28 primary rapidly approaches is untenable. The state has an obligation to redistrict in a timely manner. Since it has failed to do so, this court must act.

**JURISDICTION AND VENUE**

9.      Plaintiffs bring this action under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the United States Constitution. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States and involve the assertion of a deprivation, under color of state law, of a right under the Constitution of the United States. This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and authority to enter injunctive relief under Federal Rule of Civil Procedure 65.

10.      This Court has personal jurisdiction over Defendants, who are sued in their official capacities and reside within this State.

11.      Venue is proper in the Southern District of New York because a substantial part of the events that give rise to Plaintiffs' claims have occurred and will occur in this District. 28 U.S.C. § 1391(b)(2).

12.      Because this action "challeng[es] the constitutionality of the apportionment of congressional districts," a three-judge district court "shall be convened" for this case. 28 U.S.C. § 2284(a). While a three-judge court is not required for this court to begin acting on Plaintiffs' case, *id.* § 2284(b)(3), Plaintiffs respectfully request that this Court notify the Chief Judge of the U.S. Court of Appeals for the Second Circuit of this action and request that two judges be added to this Court for the purpose of adjudicating the merits of this dispute, *id.* § 2284(b)(1).

**PARTIES**

13.      Plaintiffs are citizens of the United States and are registered to vote in New York. Plaintiffs intend to vote for congressional candidates in the upcoming 2022 primary and general

elections. Plaintiffs reside in the following existing congressional districts, which are overpopulated relative to other districts in the state:

| Plaintiff | Existing Congressional District |
|---|---|
| Belinda de Gaudemar (UOCAVA Voter) | CD-12 |
| Anthony Hoffmann | CD-10 |
| Susan Schoenfeld (UOCAVA Voter) | CD-10 |
| Nancy Pascal | CD-8 |
| Michael Corbett | CD-12 |

14.    Defendants Peter S. Kosinski, Douglas A. Kellner, Andrew J. Spano, Anthony Casale, Todd D. Valentine, and Kristen Zebrowski-Stavisky are members of the New York State Board of Elections and are sued in their official capacities for actions taken under state law. The State Board is a bipartisan administrative agency within the executive department of the state government vested with the responsibility for the administration and enforcement of all laws relating to elections. N.Y. Elec. Law § 3-102. The State Board alone has the authority, through its commissioners and directors, to direct the actions of all local boards of elections. It is responsible for "issu[ing] instructions and promulgat[ing] rules and regulations relating to the administration of the election process." *Id.* § 3-102(1).

## FACTUAL ALLEGATIONS

**I.    New York's prior congressional plan may no longer be used in any election.**

15.    Almost exactly ten years ago, a federal three-judge court adopted congressional districts for the State of New York after the state failed to do so. *See Favors v. Cuomo*, No. 1:11-cv-05632, 881 F. Supp. 2d 356 (E.D.N.Y. 2012). Just as here, the *Favors* Plaintiffs claimed that court intervention was necessary in light of existing congressional malapportionment and the state's failure to timely adopt new districts.

16.     At the time, New York had been allocated 27 congressional seats. In adopting the then-new districts for the State of New York, the *Favors* Court properly relied on 2010 census data, dividing New York's then-population of 19,378,102 persons into 27 districts of 717,707 or 717,708 people.

17.     Now ten years later, the 2020 Census reported that New York's resident population is 20,201,249—an increase of 823,147 persons. But this population growth has not been equal across the state. In particular, New York City has gained population, while Upstate New York has lost population. In light of these population shifts, New York's existing congressional district configurations are unconstitutionally malapportioned. In particular, the Fifth, Eighth, Tenth, and Twelfth Congressional Districts are significantly overpopulated, while the rest of the districts are underpopulated.

18.     Although New York gained population over the past decade, it did not keep pace with the population growth across the rest of the United States, meaning that New York is entitled to only 26 congressional seats for the next Congress, one fewer than in the past decade. New York's congressional plan thus contains more districts than the number of representatives that New Yorkers may send to the U.S. House in the next Congress. *See* 2 U.S.C. § 2c (explaining a state's congressional plan must have the same number of congressional "districts equal to the number of Representatives to which such State is so entitled").

19.     According to the 2020 Census results, the ideal population for each of these new 26 congressional districts is 776,971 or 776,972 persons.

20.     Because New York's congressional districts are badly malapportioned, and the state lost a congressional district, the existing *Favors* court-drawn plan cannot be used in any upcoming election without violating Article I, Section II, or 2 U.S.C. § 2(c).

**II.     Under federal law, New York's congressional primary must be held on June 28, 2022.**

21.     Under its Elections Clause power, Congress may alter or make regulations for federal elections. U.S. Const. art. I, § 4. Congress exercised that power when it enacted the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) of 1986, and the Military and Overseas Voter Empowerment (MOVE) Act of 2009.

22.     Together, these Acts guarantee active-duty members of the uniformed services (and their spouses and dependents), and United States citizens residing overseas, the right "to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 52 U.S.C. § 20302(a)(1). To ensure that right was not illusory, starting in 2009, Congress required states to send absentee ballots to UOCAVA voters at least 45 days before an election for federal office to provide voters sufficient time to receive, mark, and return absentee ballots. 52 U.S.C. § 20302(a)(8)(A).

23.     To comply with these statutes and meet its obligations to UOCAVA voters, a state must hold its primary election sufficiently early within the calendar year. Nonetheless, in 2010, New York held its federal primary election in September, as it had done historically. This primary date did not allow the state to certify the results of the primary election and print and mail absentee ballots for the general election by the 45-day deadline, and consequently, New York failed to provide UOCAVA voters with timely ballots before the November general election.

24.     As a result, the Department of Justice sought and obtained a permanent injunction from the Federal District Court for the Northern District of New York fixing the date of the state's federal primary election in non-presidential years as "the fourth Tuesday in June," which would guarantee the state sufficient time to certify the results of the primary election and print and mail absentee ballots for the general election. *See* Ex. 1 at 6.

25.     That date was not plucked out of thin air; it was specifically recommended to the court by the Officers of the New York State Election Commissioners' Association (ECA), a bipartisan organization consisting of two election commissioners from each of New York State's 62 counties. *See* Ex. 2. As those Officers explained to the court, the ECA had previously "voted overwhelmingly to recommend" a federal primary "the fourth Tuesday of June" to the New York Legislature and its Governor to allow "meaningful compliance with the federal MOVE Act." *Id.* ¶ 4. The ECA warned the court that a later primary, such as in August, would hinder their ability to comply with federal law. *See generally id.* (explaining the logistical barriers to complying with UOCAVA and the MOVE Act when a federal primary occurs after June in New York).

26.     Heeding this warning, the Northern District of New York entered a permanent injunction ordering New York to conduct its federal primary on the fourth Tuesday in June in even-numbered years, "unless and until New York enacts legislation resetting the non-presidential federal primary election for a date that complies fully with all UOCAVA requirements, *and is approved by this court*." Ex. 1 at 8 (emphasis added). The court further tasked the New York State Board of Elections with ensuring the aforementioned "federal primary election calendar is implemented by and complied with by local boards of election." *Id.* at 9. Since that order, New York State has conducted each of its congressional primary elections—in 2012, 2014, 2016, 2018, and 2020—on the fourth Tuesday in June.

27.     Although New York enacted legislation to permanently set its primary as the fourth Tuesday in June in 2019, *see* 2019 Sess. Law News of N.Y. Ch. 5 (A. 779), N.Y. Elec. Law § 8-100, it has never sought approval from the court to be released from the injunction. Nor is there any reason to believe the court would have approved a late August primary had it sought authorization to do so, given the circumstances leading to the injunction in the first place.

28.     As a result, under federal law, New York is obligated to hold its federal primary on June 28, 2022. It may hold its state office primaries at a later date if it so chooses, but it cannot unilaterally trade away its federal primary for its preferred date without violating an existing federal order.

III.    **New York will not meet its obligation to adopt new congressional boundaries in time for a June 28, 2022 primary.**

29.     New York State has now been trying—and failing—to finalize its new congressional boundaries for the better part of a year.

30.     New York's Independent Redistricting Commission (IRC) held hearings in the summer of 2021 to aid it in drawing the state's congressional boundaries. But the IRC ultimately deadlocked when it came time to adopt plans, failing to send the Legislature its second-round recommended plans this past January.

31.     When the IRC failed, the New York Legislature stepped into the void, swiftly passing legislation remedying New York's malapportionment in its congressional districts. *See* Exs. 6 and 7. The Legislature's plan, as signed by Governor Hochul on February 3, would have divided the state, as required, into 26 congressional districts, each with 776,971 or 776,972 persons (the "2022 Congressional Plan"). That legislation was passed well within the time for New York to conduct its primary on June 28, as planned.

32.     After New York's congressional plan was challenged in the Steuben County Supreme Court, that court waited an entire month to hold its first hearing on the matter. At that hearing on March 3, by which time active petitioning under the 2022 Congressional Plan had already begun, the court explained that it was too late to implement a different congressional plan in time for the 2022 elections. As the court explained, "even if I find the maps violated the Constitution and must be redrawn, it is highly unlikely that the new viable map could be drawn

and be in place within a few weeks or even a couple of months, therefore striking these maps would more likely than not leave New York without any duly elected Congressional delegates." Ex. 8 at 70:6-15.

33.     One month later, in a wholesale reversal, the Steuben County Supreme Court enjoined the Legislature's 2022 Congressional Plan for the 2022 elections. *See* Ex. 3 at 17-18. In doing so, the Steuben County Supreme Court still admitted that there may not be time to develop a different map with a special master, explaining, "it is possible that New York would not have a Congressional map in place that meets the Constitutional requirements in time for the primaries even with moving the primary date back to August 23, 2022." Ex. 3 at 17. The court forged ahead anyway. A few days later, New York appellate courts stayed the Steuben County Supreme Court Order, allowing primary processes and petitioning to continue under the 2022 Congressional Plan.

34.     In the interim, on April 7, the window closed for congressional candidates to collect signatures and submit designating petitions from registered New York voters in their district, as required by New York law. *See* N.Y. Elec. Law § 6-136(2). Those petitions were gathered, signed, and submitted using the Legislature and Governor's 2022 Congressional Plan.

35.     On April 27, after all petitions had been submitted, and one week before the New York State Board of Elections was due to certify ballots for the primary election, the New York Court of Appeals, in a 4-3 decision, ordered the Steuben County Supreme Court to draw new maps for the 2022 elections with the help of a special master. *See* Ex. 4. In so ordering, the Court of Appeals explained, "it will likely be necessary to move the congressional and senate primary elections to August." *Id.* at 30. The New York Court of Appeals did not address the federal permanent injunction ordering New York to conduct its federal primary on the fourth Tuesday in June, but rather noted that, historically, "New York routinely held a bifurcated primary until

recently, with some primaries occurring as late as September." *Id.* New York's late primary, of course, was what led to the federal injunction in the first place.

36.     Two days later, after the close of the petitioning period, and two weeks before the deadline for mailing ballots to military and overseas voters, the Steuben County Supreme Court ordered that New York's federal primary election occur on August 23, 2022, and explained that a new congressional plan would be finalized on May 20. *See* Ex. 5.

37.     The Steuben County Supreme Court's process for adopting new congressional plans, meanwhile, provides no meaningful opportunity to comment on the submitted maps without traveling to Bath, New York in person—a hardship for the vast majority of New York voters, and particularly for many minority voters who live a five-hour drive away, who do not own cars, and who are not able to take an entire day off work to participate in the hearing.

38.     Under the Steuben County Supreme Court's timeline, a new congressional plan will not be finished until two weeks after primary ballots are due to be certified, and at least a week after UOCAVA ballots would need to be mailed to those voters under a June 28 primary schedule.[1]

39.     These cascading orders, several of which conflict with an existing federal order, have left candidates and voters alike confused. Voters, for one, do not know when the primary is, or who is running to represent them. Candidates do not know whether they are still qualified, will need to restart the process, or will be drawn out of the district in which they were previously running. They are unsure as to whether to start campaigning or stop. This confusion was preventable, had New York appropriately timely redistricted the state, as they are required to do.

---

[1] Forty-five days before June 28, 2022 is Saturday, May 14, one week before the Steuben County Supreme Court plans to finalize a new congressional plan.

**IV.    Federal courts have an obligation to adopt single-member congressional boundaries when a state fails to timely redistrict.**

40.    It is now plain that New York is in no position to meet its obligation to redraw its congressional boundaries in time to conduct its congressional primary on June 28. Nor is it even trying to do so.

41.    Although states are to be given the first opportunity to redistrict, United States Supreme Court precedent instructs that federal courts have an obligation to adopt single-member congressional boundaries when a state fails to do so in a timely manner. *See Branch*, 528 U.S. at 254; *see also Growe v. Emison*, 507 U.S. 25, 36 (1993) (instructing that a federal district court would be empowered to "adopt[] its own plan if it had been apparent that the state court . . . would not develop a redistricting plan in time for the primaries"); *Scott v. Germano*, 381 U.S. 407, 409 (1965) (ordering the federal district court to retain jurisdiction of a reapportionment case so that it may order "a valid reapportionment plan" "in the event a valid reapportionment plan . . . is not timely adopted" by the state legislature or state courts).

42.    If this court does not act timely, the consequences for New York are enormous: Under 2 U.S.C. § 2a(c)(5), when a state loses a congressional seat in the apportionment process, but fails to redistrict in time for congressional elections, the state shall hold an at-large election for all congressional seats. As the Supreme Court has explained, this provision functions as a "last-resort remedy to be applied when, on the eve of a congressional election, no constitutional redistricting plan exists and there is no time for either the State's legislature or the courts to develop one." *Branch*, 538 U.S. at 275.

43.    The U.S. Supreme Court has made clear, however, that federal courts have an obligation to do everything they can to redistrict a state into single-member districts pursuant to 2 U.S.C. § 2(c) before triggering this remedial provision. In *Branch*, for instance, the U.S. Supreme

Court explained that the federal district court had an obligation to adopt a single-member congressional plan for Mississippi when it became clear the state's own plan would not be pre-cleared in time to be used for that year's elections. *Id.* at 261-63. In that case, just as here, Mississippi had lost a congressional seat in the decennial apportionment of seats in the U.S. House; without the federal court's swift intervention, Mississippians would have voted for their congressional members in an at-large election. *Id.* at 275 (explaining that "§ 2a(c) is inapplicable *unless* the state legislature, and state and federal courts, have all failed to redistrict pursuant to § 2c").

44.     The window for this court to act to prevent such a scenario is swiftly closing. This court is already far behind the *Favors* Court, which adopted a congressional plan in mid-March, one day before petitioning was set to begin in advance of the state's then-June 26, 2012 primary. *See* Order Adopting Remedial Plan, *Favors v. Cuomo*, No. 1:11-cv-05632, ECF No. 242 (E.D.N.Y Mar. 19, 2012).

45.     To adopt a congressional plan in time for New York to conduct a primary on June 28, this court should do so the week of May 2nd, in time for the New York State Board of Elections to certify the primary ballot, and for UOCAVA ballots to be mailed no later than May 14.

46.     The logical congressional plan for this court to adopt is the one passed by the New York Legislature and signed by Governor Hochul on February 3, 2022. It is the plan that all of New York's congressional candidates campaigned under, gathered petitions under, and are prepared to run under. It is also the plan that New York state courts were prepared to use for its 2022 elections until just recently, its compliance with the New York Constitution notwithstanding, to ensure it could conduct timely elections.

47.     New York's decision to forge ahead to attempt to adopt different congressional plans as its federally mandated June 28 primary rapidly approaches is untenable. The state has an obligation to timely redistrict. Since it has failed to do so, this court must act.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of Article I, Section 2 of the U.S. Constitution**
**42 U.S.C. § 1983**
**Congressional Malapportionment**

48.     Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint and the paragraphs in the count below as though fully set forth herein.

49.     Article I, Section 2 of the U.S. Constitution requires "that when qualified voters elect members of Congress each vote be given as much weight as any other vote." *Wesberry v. Sanders*, 376 U.S. 1, 8 (1964). This means that state congressional districts must "achieve population equality 'as nearly as is practicable.'" *Karcher v. Daggett*, 462 U.S. 725, 730 (1983) (quoting *Wesberry*, 376 U.S. at 7–8).

50.     Article I, Section 2 requires an even higher standard of exact population equality among congressional districts than what the Fourteenth Amendment requires of state legislative districts. It "permits only the limited population variances which are unavoidable despite a good-faith effort to achieve absolute equality, or for which justification is shown." *Karcher*, 462 U.S. at 730 (quoting *Kirkpatrick v. Preisler*, 394 U.S. 526, 531 (1969)). Any variation from "absolute population equality" must be narrowly justified. *Id.* at 732–33.

51.     Given the significant population shifts that have occurred since the 2010 Census, New York's congressional districts as drawn by the *Favors* Court are now unconstitutionally malapportioned and their use would violate Plaintiffs' constitutional right to an undiluted vote.

## COUNT III

### Violation of 2 U.S.C. § 2c
### Congressional Malapportionment

52.     Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Petition and the paragraphs in the count below as though fully set forth herein.

53.     2 U.S.C. § 2c provides that, in a state containing "more than one Representative," "there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled."

54.     New York's current congressional district plan contains 27 districts. But New York is currently allotted only 26 seats in the U.S. House. As a result, the congressional plan as drawn by the *Favors* Court violates Section 2c's requirement that the number of congressional districts be "equal to the number of Representatives to which [New York] is so entitled."

55.     Any future use of New York's current congressional district plan would violate 2 U.S.C. § 2c and would unlawfully dilute Plaintiffs' votes.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

a.      Notify the Chief Judge of the U.S. Court of Appeals for the Second Circuit of this action and request that two other judges be designated to form a three-judge district court, 28 U.S.C. § 2284(b)(1);

b.      Declare that the current configuration of New York's congressional districts, as adopted by the *Favors* Court in 2012, violates Article I, Section 2 of the United States Constitution, and 2 U.S.C. § 2c;

c.      Preliminarily and permanently enjoin Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of

them, from implementing, enforcing, or giving any effect to New York's congressional districting plans as adopted by the *Favors* Court;

d.      Order Defendants to certify the primary ballot under a congressional plan as adopted by this court which complies with Article I, Section 2 of the U.S. Constitution and 2 U.S.C. § 2c, in time for New York to conduct its primary on June 28, 2022, as required by federal court order;

e.      Award Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action, pursuant to 42 U.S.C. § 1988 and other applicable laws; and

f.      Grant such other and further relief as the Court deems just and proper.

Dated:  May 2, 2022                                    Respectfully submitted,

                                                       **EMERY CELLI BRINCKERHOFF**
                                                       **ABADY WARD & MAAZEL LLP**

                                                By:    */s/ Andrew G. Celli, Jr.*
                                                       Matthew D. Brinckerhoff
                                                       Andrew G. Celli
                                                       600 Fifth Avenue, 10th Floor
                                                       New York, NY 10020
                                                       Tel. (212) 763-5000
                                                       mbrinckerhoff@ecbawm.com
                                                       acelli@ecbawm.com


                                                       **ELIAS LAW GROUP LLP**


                                                By:    */s/ Aria C. Branch*
                                                       Aria C. Branch*
                                                       Shanna M. Reulbach*
                                                       Haley Costello Essig*
                                                       Maya Sequeria*
                                                       Christina A. Ford*
                                                       Aaron M. Mukerjee*
                                                       10 G St NE, Ste 600
                                                       Washington, DC 20002
                                                       Tel.: (202) 968-4490
                                                       abranch@elias.law
                                                       sreulbach@elias.law
                                                       hessig@elias.law
                                                       msequeria@elias.law
                                                       cford@elias.law
                                                       amukerjee@elias.law
                                                       *Pro hac vice applications to be submitted.*