Troutman Pepper Hamilton Sanders LLP
875 Third Avenue
New York, New York  10022

troutman.com

**Bennet J. Moskowitz**
bennet.moskowitz@troutman.com

May 2, 2022

**VIA ECF**

Ruby J. Krajick, Clerk Of The U.S. District Court
For The Southern District Of New York
Daniel Patrick Moynihan U.S Courthouse
500 Pearl Street
New York, New York 10007

**Re:** *De Gaudemar et al. v. Kosinski et al.*, No.22-cv-03534

Dear Clerk:

I represent the Petitioners in *Harkenrider v. Hochul*, No. E2022-0116CV (N.Y. Sup. Ct. Steuben Cnty.) (hereinafter "Harkenrider Petitioners"), the state-court redistricting lawsuit that Plaintiffs here seek to disrupt with their frivolous, eleventh-hour federal lawsuit.  Dkt.4.  Plaintiffs' federal lawsuit is a thinly veiled, collateral attack on the New York court's ongoing redistricting efforts.  Plaintiffs' lawsuit seeks to sow chaos into those orderly state-court proceedings—proceedings that Plaintiffs chose not to move to intervene in—asking this Court to force New York to run its congressional elections under an unconstitutional map that the New York Legislature never even validly enacted.

Plaintiffs' lawsuit is frivolous for at least two reasons.  First, Plaintiffs' lawsuit is moot because the Steuben County Supreme Court *already* invalidated New York's 2012 congressional map, *see Favors v. Cuomo*, No. 11-CV-5632, 2012 WL 928223, at *1 (E.D.N.Y. Mar. 19, 2012), on malapportionment grounds, Ex.1 at 17.  ***Given that challenging this already invalidated map encompasses the entirety of both of Plaintiffs' causes of action in this federal lawsuit, Dkt.1 at 14–15, their lawsuit must be dismissed***, *Green v. Mazzucca*, 377 F.3d 182, 183 (2d Cir. 2004).  Second, Plaintiffs' requested relief is based upon their confused belief that New York must "conduct its congressional primary on June 28, 2022."  Dkt.1 at 1–2.  The Northern District of New York—the federal court that entered the relevant injunction setting New York's future congressional primaries for "the fourth Tuesday in June," *United States v. New York*, No. 1:10-cv-1214, 2012 WL 254263, at *2 (N.D.N.Y. Jan. 27, 2012)—recognized that "this decision by no means precludes New York from . . . selecting a different date, so long as the new date fully complies with UOCAVA," *id.*  The Northern District has repeatedly permitted New York to move deadlines related to its primary election, only ensuring that those new deadlines comply with the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) and the Military and Overseas Voter Empowerment (MOVE) Act.  *See United States v. New York*, No. 1:10-cv-1214, Dkts.88, 91.  Here, the Steuben County Supreme Court has ordered that New York hold its congressional primary on August 23, 2022, Ex.2 at 2, which complies with the UOCAVA and the MOVE Act, and

**Ruby J. Krajick**
May 2, 2022
Page 2



thus there could be no basis for the Northern District to block that change, *see, e.g.*, Fla. Div. of Elections, *Election Dates* (2022) ("Election Dates For 2022 are: Primary Election: August 23").[*]

If all of that is not enough, Plaintiffs' requested remedy is absurd and against all equitable considerations.  Plaintiffs ask this Court to strike down a 2012 congressional map that the New York courts have *already invalidated* and replace it with another map that the New York courts have *also already invalidated*: the egregiously gerrymandered map that the Legislature had no authority to enact in the first place, because the Legislature failed to follow the New York Constitution's exclusive process for enacting redistricting legislation.  *Harkenrider v. Hochul*, ___N.E.3d.___, 2022 WL 1236822, at *1 (N.Y. Apr. 27, 2022).  Even entertaining such a request would throw New York's election system into chaos, contrary to the principle that "reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court."  *Growe v. Emison*, 507 U.S. 25, 34 (1993).

Accordingly, this Court should summarily dismiss Plaintiffs' lawsuit as moot.  If, however, this Court does not dismiss this lawsuit immediately, it should deny Plaintiffs' motion for a temporary restraining order, while establishing a reasonable briefing schedule on Plaintiffs' request for a preliminary injunction.  Alternatively, if this Court is inclined to consider Plaintiffs' request for a temporary restraining order at all, this Court should withhold ordering any relief until after it affords the Harkenrider Petitioners (who intend to intervene as defendants) and the New York Board of Elections a fair opportunity to respond.


Sincerely,


*/s/ Bennet J. Moskowitz*
Bennet J. Moskowitz


CC:     All Counsel of Record (via ECF)

---

[*] Available at https://dos.myflorida.com/elections/for-voters/election-dates/ (last visited May 2, 2022).

# EXHIBIT 1

STATE OF NEW YORK
SUPREME COURT : COUNTY OF STEUBEN

_____

Index No. E2022-0116CV

TIM HARKENRIDER, GUY C. BROUGHT,
LAWRENCE CANNING, PATRICIA CLARINO,
GEORGE DOOHER, JR., STEVEN EVANS, LINDA
FANTON, JERRY FISHMAN, JAY FRANTZ,
LAWRENCE GARVEY, ALAN NEWPHEW,
SUSAN ROWLEY, JOSEPHINE THOMAS, and
MARIANNE VOLANTE,

                            Petitioners,

        -against-                                    DECISION and ORDER

GOVERNOR KATHY HOCHUL, LIEUTENANT
GOVERNOR AND PRESIDENT OF THE SENATE
BRIAN A. BENJAMIN, SENATE MAJORITY LEADER
AND PRESIDENT PRO TEMPORE OF THE SENATE
ANDREA STEWART-COUSINS, SPEAKER OF THE
ASSEMBLY CARL HEASTIE, NEW YORK STATE
BOARD OF ELECTIONS, and THE NEW YORK STATE
LEGISLATIVE TASK FORCE ON DEMOGRAPHIC
RESEARCH AND REAPPORTIONMENT,

                            Respondents.

_____

PRESENT: Hon. Patrick F. McAllister
              Acting Supreme Court Justice

        The Petitioners, through their attorneys, are seeking to set aside the newly enacted
congressional districts and senate districts. The Petitioners allege that the Respondents did not
have the authority under the constitution to create the new congressional and senate districts as
they did, and further that the Respondents engaged in prohibited gerrymandering when creating
the districts. The Respondents oppose the Petitioners' application. The court heard oral
argument on March 3, 2022. The court reserved decision pending further development of the
record. The court heard testimony of several experts and final arguments were heard on March
31, 2022.

        In making this Decision and Order the court has considered all the submissions made in
this matter. To specifically innumerate them would needlessly waste pages of paper and lots of
ink. The e-file system has them all enumerated.

Page 1 of 18

Background:

Although it has been quite some time since one party controlled the Senate, the Assembly, and held the governorship, New York State has a long history of gerrymandering when it comes to the creation of new voting districts. Whichever major political party has been in power has used the creation of new voting districts to their own advantage and to the disadvantage of their opposition. The result was that 98% of incumbents were getting reelected before the constitutional amendment in 2014.

The scourge of gerrymandering is not unique to New York. In recent years the courts throughout the country have been called on to invalidate gerrymandered districts and to create new fairer districts. League of Women Voters v. Commonwealth, 178 AD3d 737 (Pa. 2018); League of Women Voters of Fla. v. Detzner, 172 So. 3d 363 (Fla. 2015); Rucho v. Common Cause, 204 L.Ed. 2d 931 (2019). In 2014, New York State took major steps to avoid being plagued by gerrymandering by amending Article III §§4 & 5 of the New York State Constitution. The 2020 census was the first time after the constitutional amendment that led New York to draw new districts. Therefore, this is a case of first impression in many respects.

Under New York's very old rule there was a district seat for each county, except for Hamilton County. The Federal Courts found that unconstitutional because some counties were sparsely populated resulting in the citizens of those counties receiving disproportionate representation as compared to the heavily populated counties. Reynolds v. Sims, 377 U.S. 533 (1964 ); In re Orans, 15 NY2d 339 (1965). The law was changed to create districts that were roughly equal in population. In doing so other redistricting criteria in the Constitution such as not crossing county lines were given less value. See, Wolpoff v. Cuomo, 80 NY2d 70 (1992).

In the past most redistricting challenges were heard in federal court. However, in Rucho v. Common Cause, 139 S.Ct. 2482 (2019) the court ruled that federal courts do not have the authority to strike down maps based on partisan gerrymandering. Hence, this action is brought in state supreme court.

The courts have recognized that redistricting requires a balancing of sometimes competing Federal and State Constitutional requirements. "The test is whether the Legislature has 'unduly departed' from the State Constitution's requirements regarding contiguity, compactness and integrity of counties (Matter of Schneider v. Rockefeller, 31 NY2d 420, 429) in its compliance with federal mandates. It is not our function to determine whether a plan can be worked out that is superior to that set up by the legislature. Our duty is, rather, to determine whether the legislative plan substantially complies with the Federal and State Constitutions." Wolpoff v. Cuomo, (supra. at 78). To again quote Wolpoff "This is no simple endeavor". "Balancing the myriad requirements imposed by both the State and the Federal Constitution is a function entrusted to the Legislature. It is not the role of this, or indeed any, court to second-guess the determinations of the Legislature, the elective representatives of the people in this regard. We are hesitant to substitute our own determination for that of the Legislature even if

Page 2 of 18

we would have struck a slightly different balance on our own." " Wolpoff v. Cuomo, (supra. at 79).

Standing:

The Respondents challenge whether or not the Petitioners in this case have standing to bring this action since the various Petitioners live in only a small number of Congressional and State Senate Districts.

It is the law's policy to only allow an aggrieved person to bring a lawsuit. One not affected by anything a would-be defendant has done or threatened to do ordinarily has no business suing. *New York Practice 6th Ed.* Seigel §136 Pg. 270.

Many of the prior redistricting challenges where the courts have found petitioners do not have standing were cases focused only on a particular district boundary. In those cases if the petitioner did not live in the district he/she did not have standing. The Petitioners in this case are challenging the entire process as being in violation of the Constitutionally prescribed method for redistricting and in particular that the Congressional and State Senate maps were drawn with a political bias that is contrary to the Constitution. In Dairylea Cooperative, Inc. v. Walkey, 38 NY2d 6 (1975) a milk distributor sought to challenge a Commissioner of Agriculture decision which granted a milk dealer license to another entity. The court found there was standing because the Plaintiff was in the "zone of interest." Further, only when there is a clear lack of injury would standing be denied.

In Society of Plastics Industry. Inc. v. County of Suffolk, 77 NY2d 761 (1991) the court made clear that having an economic interest is not sufficient to find standing if the issue is a non-economic interest. In that case to have standing the Plaintiff needed to show non-economic issues such as environmental or aesthetic reasons to challenge the legislation.

If this court finds the method used in enacting these maps violated the Constitution this would not affect just a handful of districts, but in fact would effect every district in New York. It would be impractical to require someone from every district to serve as a Petitioner. Once one district is invalid it impacts neighboring districts. But if the entire process is invalidated then everyone is impacted. The court finds these Petitioners have standing.

The 2014 Constitutional Amendment:

The 2014 amendment to the New York Constitution includes both a provision to prohibit discrimination against racial or language minority voting groups and a prohibition against creating maps with partisan bias. The prohibition against discriminating against minority voting groups at the least encapsulated the requirements of the Federal Voting Rights Act, and according to many experts expanded their protection. That new provision is not currently being challenged. Therefore, the court will focus on the prohibition against partisan

Page 3 of 18

bias and the process by which redistricting was to take place.

To tell how important the people considered the issue of partisan bias not only was Article III section 4 amended to add "Districts shall not be drawn to discourage competition or for the purpose of favoring or disfavoring incumbents or other particular candidates or political parties", but the Constitutional process for redistricting was also revised to create an Independent Redistricting Committee (IRC), which was to create non-biased bipartisan maps. This provision creating an IRC was intended to take the creation of proposed redistricting maps out of the hands of a one-sided, partisan legislature as much as possible. This IRC committee was to consist of appointees as follows: two members by the temporary president of the senate, two members by the speaker of the assembly, two by the minority leader of the senate and two by the minority leader of the assembly, plus two additional members which were to be appointed, one by the Democratic committee members and one by the Republican committee members. NY Constitution Art. III §5-b. Although the word "compromise" is not used it is clear from reading the constitutional amendment that the people of the State of New York believed that nonpartisan maps agreed upon as a result of a compromise were the best way to avoid gerrymandering when redistricting. At the very least in the event one party controlled both the senate and the assembly the amended constitution required there to be both support from some of the Democrats on the committee and also by some of the Republicans on the committee in order for the redistricting plan to receive the minimum seven votes necessary for the plan to be submitted to the legislature for approval, and to the governor for signature. NY Constitution Art III §5-b(f).(1) reads as follows:

> "In the event that the speaker of the assembly and the temporary president of the senate are members of the same political party, approval of a redistricting plan and implementing legislation by the commission for submission to the legislature **shall** require the vote in support of its approval by at least seven members including at least one member appointed by each of the legislative leaders." (Emphasis added)

In 2022 the Democrats controlled both the senate and the assembly. Nevertheless, the IRC committee failed to come up with any plan that obtained the minimum seven votes. There was no plan that received bipartisan support. That eventuality was anticipated in the constitution and according to Art. III §5-b(g) the plan or plans receiving the highest vote were to be submitted to the legislature. The Democrat committee and the Republican committee each submitted their own plans known as Plan A and Plan B with an equal number of IRC votes, but only from their own respective subcommittees. The court heard limited testimony concerning both Plan A and Plan B and received copies of those plans as exhibits. Even though a few of the proposed districts seemed to be the same in both plans, the IRC was not able to come up with a bipartisan plan that received seven votes. Both Plan A and Plan B were submitted to the legislature and the legislature quickly rejected both plans. According to the amended constitution, the committee was then to submit to the legislature a second set of redistricting plans. NY Constitution Art. III §4(b).

Page 4 of 18

In 2022 the committee never submitted a second revised redistricting proposal to the legislature. Hence, the legislature went ahead and in a few days drafted and passed their own redistricting maps. A couple of Democrats voted against the legislature's redistricting maps, but otherwise the legislation was passed along party lines. It is these Congressional and Senate redistricting maps that this court must review to determine whether they violate the state and/or federal constitutions.

Before analyzing the specifics of the redistricting plans that were passed, it is important to review what did not happen. The IRC committee never embraced the task of coming up with compromise plans. It was clear from the amended constitution that the people of the State of New York believed the best way to avoid partisan politics in drawing new district lines was for a small group to work together to come up with compromise plans that obtained some bipartisan support. The plans did not have to be unanimously approved by the members of the committee, but at least some members of each subcommittee had to support the plan. The court comes to this conclusion from the following:

1. The Constitution was amended to add Article III §4(c)(5) which now reads as follows: "Districts shall not be drawn to discourage competition or for the purpose of favoring or disfavoring incumbents or other particular candidates or political parties." ;
2. The Constitution created an Independent Restricting Committee (IRC);
3. The IRC was constructed in such a way that neither political party would attain the seven votes necessary without bipartisan support;
4. The Constitution specifically reads that the approved plan had to have support from at least one appointee of each of the political leaders that appointed members to the IRC.
5. That even if the IRC plan was rejected it was the IRC and not the legislature that was authorized to draw a second set of revised maps.
6. That even if the second set of IRC maps was rejected, the legislature could only vary the enacted maps slightly from the IRC maps. There could be no more than a 2% deviation in any district according to the Redistricting Reform Act of 2012.
7. The people of the State of New York rejected the 2021 ballot proposal that would have authorized the legislature to draw the maps in the event the IRC was not able to come with maps.

By contrast the important constitutional amendment that protected racial and language minority voting groups from being discriminated against had only one provision. Article III §4(c)(1). There was no new committee appointed to insure that this amendment to the Constitution was carried out. The court can only conclude that the people of the State of New York thought the creation of a non-biased, nonpartisan IRC committee that must work together to arrive at bipartisan redistricting maps was crucial to avoid gerrymandering - and even though the legislature, under certain circumstances, had the power to create their own redistricting maps, the legislature would have been under scrutiny in rejecting two sets of proposed bi-partisan maps before drawing their own maps, a circumstance that would invite the wrath of the electorate. Further, the law only permits slight alterations of the IRC maps by the legislature.

Page 5 of 18

The legislature is not free to ignore the IRC maps and develop their own.

In a democracy it is rare if ever that one party has all the right answers and all the right policies. A democracy works best when every responsible adult has a voice and when by listening to each other a compromise is worked out that incorporates part of everyone's opinion. Unfortunately, in recent years the idea of "compromise" has gotten the reputation as being something distasteful and something to be avoided. Yet compromise is the foundation upon which the United States Constitution, our political system, and our country was established. It is compromise that is the safest way to avoid the plague of partisan gerrymandering. If gerrymandering is allowed to occur then certain groups of voters will be discriminated against and become disenfranchised. Discrimination comes in many forms whether it be against ones race, sex, age, religion, political party or something else. The New York Constitution specifically says, "When drawing district lines, the commission shall consider whether such lines would result in the denial or abridgement of racial or language minority voting rights, and districts shall not be drawn to have the purpose of, nor shall they result in, the denial or abridgment of such rights. Districts shall be drawn so that, based on the totality of the circumstances, racial or minority language groups do not have less opportunity to participate in the political process than other members of the electorate and to elect representatives of their choice." Art. III §4(c)(1).

Gerrymandering discrimination hurts everyone because it tends to silence minority voices. Then none of us receives the benefit from the input of the silenced. Imagine a society where only Democrats are able to work on cancer research or only Republicans could be board certified as heart surgeons. Imagine all the accomplishments and discoveries that would never come to pass because the majority thought it best to eliminate minority positions or views. Lives and the common good are at stake. When we choose to ignore the benefits of compromise we not only hurt others, we hurt ourselves as well.

There is nothing in the constitution that permits the IRC to just throw up their collective hands. Courts are very familiar with juries who say "We can't come to an agreement" during deliberations. However, the more the court keeps requiring them to go back and try again the more likely they are to finally reach a consensus. It is rare for the court to end up with a hung jury. Here the IRC stopped working well before their deadline. What someone should have done was bring an action to compel the members of the IRC to continue their work or for the political sides of the legislatures that appointed 8 of the 10 members of the IRC to remove and replace any IRC member that did not embrace his/her constitutional role. NY Constitution Art III §5-b(a)(1)-(4). Then either the court could have compelled the IRC to work together until they came up with a plan or the IRC new members could develop new bipartisan maps. Instead the IRC was permitted to throw up their hands and the legislature stepped in. Does the Constitution permit the legislature to take over if the IRC fails to do it's job? By the Constitution the IRC's drop dead date for submitting a plan was February 28th. This action was commenced long before that deadline.

Page 6 of 18

Under the "new" process that was put in place a committee (IRC) was formed to try to create a fair redistricting map. The committee had 4 Democrats, 4 Republicans and 2 people that could not be Democrats or Republicans. The Democrats chose 1 of the 2 and the Republicans chose the other. This year the committee met and considered a number of plans. The Democrats came up with a plan (Plan A) and the Republicans came up with a different plan (Plan B). The IRC could not come up with a compromise plan so both the Democrat and Republican plans were submitted to the legislature, although neither plan had obtained the required seven votes. Seven votes in favor of a plan were required since the Democrats control both the Senate and the Assembly. Both submitted plans were rejected by the legislature and sent back to the committee. The committee could not agree on anything different. They had a 15 day deadline but the IRC stopped working well before the deadline. So the legislature created it's own map. The legislature's plan differed significantly from either Plan A or Plan B submitted by the IRC.

Under the 2014 amendment the districts shall not be drawn to discourage competition or for the purpose of favoring or disfavoring incumbents or other particular candidates or political parties. Under constitutional criteria the maps must be compact, contiguous, of equal populations, avoid abridgment of racial or language minority voting rights, maintain cores, and not cross the boundary lines of pre-existing subdivisions such as counties, cities, towns and communities of interest and there was to be no partisan gerrymandering. "The anti-gerrymander provision of the State Constitution is found in article III. Section 4 requires that Senate districts 'be in as compact form as practicable' and 'consist of contiguous territory'; and section 5 provides that Assembly districts shall be formed from 'convenient and contiguous territory in as compact form as practicable. As we recognized in Matter of Orans, (15 NY2d 339, 351, supra), these constitutional requirements remain binding although they must be harmonized with the first principle of substantial equality of population among districts." Schneider v. Rockefeller, 31 NY2d 420 (1972).

<u>The Failed 2021 Constitutional Amendment and Subsequent 2021 Legislation:</u>

The political powers realized that the redistricting compromise plan envisioned by our 2014 amended constitution had a flaw. The plan lacked a way to handle the contingency of the committee not coming up with a bipartisan plan(s). Thus another constitutional amendment was proposed and put before the voters in November of 2021, under which the legislature could create and the Governor enact its own redistricting plan in the event the IRC committee failed to carry out its constitutionally prescribed duties. This constitutional amendment was voted down by the people of the State of New York - Republicans, Democrats, and Independents alike. Just three (3) weeks later, the legislature enacted legislation signed by the governor giving themselves the power to do exactly what the people of the State of New York had just voted down three (3) weeks earlier. Even though the proposed 2021 Constitutional Amendment contained other new provisions, none were hot button issues. In part this decision will focus on that legislation that was enacted just three (3) weeks after the proposed 2021 Constitutional Amendment was voted down.

Page 7 of 18

<u>Redistricting Reform Act of 2012 (The 2% Rule)</u>:

Another key component of the Redistricting Reform Act of 2012 that directly impacts the subsequent 2014 constitutional amendment was that: **"Any amendments by the senate or assembly to a redistricting plan submitted by the independent redistricting commission, shall not affect more than two percent of the population of any district contained in such plan."** Redistricting Reform Act of 2012 N.Y. Sess, Laws 17 §3. The currently enacted plans vary by more than 2% from either of the plans submitted by the IRC. The Respondents do not allege that the plans they developed adhere to the 2% modification limit of either IRC map that was submitted. The Respondents contend that the "Notwithstanding any other provision" language of the newly enacted 2021 legislation made it so the legislature was not bound by the 2% rule. Obviously, it could not be compared to a final IRC map as such a map was never submitted. The court finds the 2% variance rule was another important procedural check to avoid partisan gerrymandering. These current maps ignore that procedural requirement. In essence, the legislature through the 2021 legislation, freed themselves from the constitutional process and the 2% limitation.

<u>Analysis</u>:

The New York Constitution Article III §§4 & 5 describes the process for the creation of election districts. Unconsolidated Laws §4221 says the supreme court has the jurisdiction to hear a petition brought by any citizen that wishes to challenge the redistricting law. The court is mandated to give this case the highest priority. The court has 60 days in which to render a decision from when the petition was filed**.** The Petition was filed February 3, 2022 so a decision must be rendered by April 4, 2022. If the court finds the redistricting plans invalid the legislature shall have a reasonable opportunity to correct their deficiency. Art. III §5. The Petitioners contend that this provision should be ignored by the court because the legislature never properly had jurisdiction to create these maps in the first place, since the IRC never submitted a second map to be considered.

The Petitioners seek to have this court find the 2022 Congressional Map and the 2022 Senate Map to be void *ab initio*. The Petitioners allege the legislature lacked the constitutional authority to enact redistricting maps because the Constitution proscribed an exclusive process, which in 2022 was not followed.

Not only must this court interpret the redistricting process under the 2014 amendment to the Constitution, but must also determine whether or not the legislature had the authority to alter the constitutional process by passing the recent 2021 legislation, when granting that same legislative authority was voted down by the people of the State of New York in the 2021 proposed Constitutional Amendment three weeks earlier.

On the November, 2021 ballot there was a proposed constitutional amendment to Article III Section 4(b) of the New York State Constitution that would have added language that

Page 8 of 18

in the event the IRC redistricting commission fails to vote on a redistricting plan and implementing legislation by the required deadline then each house should introduce a redistricting plan and implementing legislation. When the constitutional amendment was voted down by the People of the State of New York the legislature passed a 2021 amendment to the Redistricting Reform Act of 2012 Section 4 (a) & (c) to provide that if the commission does not vote on any redistricting plan for any reason the legislature shall draft redistricting maps and implementing legislation and submit it to the governor.

In challenging the recently enacted 2021 legislation this court must start with the presumption that the legislation is constitutional. Matter of Moran Towing Corp. v. Urbach, 99 NY2d 443 (2003). Further, facial constitutional challenges like this one are disfavored. Overstock.com, Inc. v. New York State Dept. of Taxation and Fin., 20 NY3d 586 (2013). A challenge to a duly enacted statute requires the challenger to satisfy the substantial burden of demonstrating that in every conceivable application the enacted law suffers wholesale constitutional impairment. Center for Jud. Accountability, Inc. v. Cuomo, 167 AD3d 1406 (Third Dept. 2018); appeal dismissed 33 NY3d 933 (2019). Basically the challenger must establish that there is no set of circumstances under which the legislation could be valid. Overstock.com, Inc. v. New York State Dept. of Taxation and Fin., (supra). This court must make every effort to interpret the statute in a manner that otherwise avoids a constitutional conflict. See, People v. Davidson, 27 NY3d 1083 (2016).

The Petitioners contend that the November, 2021 legislation not only amended the Redistricting Reform Act of 2012 but also created a second path for redistricting that is not in the constitution. The constitution envisions the redistricting process to occur through the IRC. Only after the IRC has twice submitted maps that are rejected by the Legislature does the Legislature take up the process. The Constitution uses such words as **"the"** and **"shall"** to indicate this was the way and the only way that redistricting maps were to be drawn.

The 2021 legislation purportedly revised the 2012 Redistricting Reform Act so that if the IRC fails for any reason to submit a plan then the legislature shall prepare their own redistricting maps. However, the legislature can not override a constitutional barrier by passing a new law. City of N.Y. v. N. Y. State Div. of Human Rights, 93 NY2d 768 at 774 (1999). Further, this 2021 legislation purportedly negated the 2% variance limitation if the legislature drafted their own maps.

This court finds that by enacting the legislation in November of 2021 the legislature made it substantially less likely that the IRC would ever submit a bipartisan plan when the senate, assembly and governorship are all controlled by the same political party. Since the senate and assembly leaders appoint four of the ten members of the IRC, these four members, and by extension the legislature, would essentially have carte blanche veto power to keep the vote below the seven votes necessary to pass such a bipartisan plan. The intent of the 2014 constitutional amendment is to have bipartisan maps drawn by the IRC commission submitted and passed by the legislature.

Page 9 of 18

Some might argue that whether the IRC failed to twice submit bipartisan maps or whether they did submit bipartisan maps and the legislature voted them down twice that it doesn't make any difference; that the legislature had the power to step in under either scenario. However, this court sees a difference. In this case the Legislature can say the IRC did not come up with bipartisan maps so we had to act. The IRC was a scapegoat for the legislature. If on the other hand the constitutional process were followed, the legislature would be in the awkward political position of having to vote down two sets of proposed bipartisan redistricting maps before drafting their own maps, at the risk of raising the ire of the voters at the next election. In addition the legislature, in drafting their own maps, would be under pressure and scrutiny to adopt a good portion of the proposed bipartisan maps submitted by the IRC commission, and they would also be limited by the no more than 2% alteration rule. The conclusion is that the currently enacted maps would have been substantially different had the constitutional process been followed.

This court finds that the November, 2021 legislation which purported to authorize the legislature to act in the event the IRC failed to act was not a mere enactment of legislation to help clarify or implement the Constitution, but in fact substantially altered the Constitution. Alteration of the Constitution can only be done by constitutional amendment and as recently as November, 2021 the people rejected the constitutional amendment that would have granted the legislature such authority. Therefore, this court finds the recently enacted Congressional and Senate maps are unconstitutional. Further, the enacted maps are void *ab initio.* Under the currently constructed Constitution when the IRC failed to act and submit a second set of maps there is nothing the Legislature has the power to do. Therefore, the court will need to step in. The court would note that not only are the Congressional District Maps and Senate District Maps void but the Assembly District Maps are void *ab initio* as well. The same faulty process was used for all three maps. Therefore new maps will need to be prepared for the Assembly Districts as well.

The People of the State of New York have spoken clearly. First, in the 2014 Constitutional Amendment not only did the People include language to prevent gerrymandering, but they also set forth a process to attain bipartisan redistricting maps through the IRC. The People of the State of New York again spoke loudly when they soundly voted down the proposed 2021 Constitutional amendment that would have granted authority to the Legislature to bypass the IRC redistricting process.

Although the court has already stricken the enacted redistricting maps as unconstitutional the court will discuss the Petitioners' further argument that the congressional and senate redistricting maps were the result of partisan bias. The standard of proof is beyond a reasonable doubt.

When considering redistricting there are two fundamental federal law principles that apply. There is the Equal Protection Clause of the 14th Amendment and the Voting Rights Act. The Equal Protection clause requires districts to be composed of the same number of residents

Page 10 of 18

or within acceptable variance thereof. The Voting Rights Act prohibits drawing lines that deny racial or language minorities a fair opportunity to elect a candidate of their choice. In addition to those federal requirements, the New York constitution adds several other factors which must be considered, including the district being contiguous, compact, drawn so as to not favor or disfavor an incumbent or a political party, trying to keep county and town boundaries within the same district, and trying to maintain the cores of prior districts. Because of the need to make districts equal in population it is not always possible to meet all of the other factors to be considered. Article III §4 (c) 1 - 5 list a number of factors which "shall" be considered. "**Shall**" is a requirement.

What is compactness? "Reapportionment is one area in which appearances do matter." Shaw v. Reno, 509 U.S. 630 at 647 (1993). Compactness has been described in scientific terms as the extent to which a district's geography is dispersed around its center. In practice many courts use the eyeball test. Bush v. Vera, 517 U.S. 952 at 959 (1996). The Petitioners in this case claim districts that look like snakes or are elongated over hundreds of miles violate the Constitutional requirement of compactness. What the courts have found is that "compactness" may vary depending on whether or not the issue is racial gerrymandering or dilution of vote cases. "Dramatically irregular shapes may have sufficient probative force to call for an explanation." Shaw v. Reno, (supra. at 647); Karcher v. Daggett, 462 U.S. 725 at 755 (1983).

A contiguous district requires that all parts of the district be connected. This is usually measured by whether it is possible to travel to all parts of the district without ever leaving the district. In this case, some of these proposed districts you would need a boat to go from one section of the district to another, but at least you do not have to cross district lines, just County lines and other political boundaries.

According to the eyeball test there are some districts that don't look like they are compact. They include Congressional Districts 1,2, 3, 7, 8, 10, 17, 18, 19, 22 and 24. However, the eyeball test is not proof beyond a reasonable doubt.

The preservation of the cores of prior districts. At least 11 states, including New York, include this as part of the criteria when drawing new maps. The likely theory behind this is that by maintaining continuity of districts you maintain continuity of the representation for the citizens within that group. Obviously, when the number of districts has to change it is impossible to fully comply with this criteria.

According to *Redistricting Law 2020* by Davis, Strigari, Underhill, Wice & Zamarripa 18 states have now included language prohibiting redistricting to be drawn with the intent of favoring or disfavoring an incumbent or a political party, with 12 other states currently in the process of adopting neither favoring or disfavoring language. This language was the new anti-gerrymandering requirement added by the 2014 New York Constitutional Amendment.

Although the Federal Courts no longer have the authority under the First and/or

Page 11 of 18

Fourteenth Amendments to invalidate maps based on partisan gerrymandering, numerous states and state courts have been addressing these issues. Rucho v. Common Cause, (supra.). States have been addressing this through constitutional amendments, the appointments of independent commissions and by prohibiting the drawing of district lines for partisan advantage. Rucho v. Common Cause, (supra.). In recent years both Florida and Pennsylvania courts have found and overturned maps based on partisan gerrymandering. See, League of Women Voters of Pa. v. Commonwealth 644 PA 287 (2018); League of Women Voters of Fla, v. Detzner, 172 So. 3d 363 (2015). In both of these cases the courts interpreted their respective constitutional provision which prohibited redistricting with the intent to favor or disfavor a political party or an incumbent. In the 2014 Constitutional Amendment Art. III §4(c)(5) New York added "Districts shall not be drawn to discourage competition or for the purpose of favoring or disfavoring incumbents or other particular candidates or political parties." The meaning of this portion of the constitution and how it applies to the recently enacted Congressional and State Senate maps is key. Courts have for a long time struggled with being able to adequately define a standard to apply in such situations. Everyone agrees that politics plays some part in redistricting. In Davis v. Bandemer, 478 U.S. 109 (1986). At what point does permissible partisanship become unfair or unconstitutional? How much is too much? Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections, No. 11 C 5065 2011 U.S. Dist. LEXIS 117656 (2011).

In this case the Petitioners have presented expert testimony through Shawn Trende indicating that he ran at first 5,000 and then 10,000 potentially unbiased simulated redistricting maps. Respondents' expert Michael Barber testified he ran 50,000 maps attempting to duplicate Trende's maps. Trende and Barber's maps came up with the same results. The result according to Trende's Gerrymandering Index was that the maps adopted by the Legislature and signed by Governor Hochul were the most favorable to Democrats of any of the sample maps. Barber disagreed with Trende's use of a a Gerrymandering Index and concluded that the enacted maps actually favored Republicans. Likewise, Respondents other experts came to the conclusion that the enacted maps actually favored Republicans. The court finds it strains credulity that a Democrat Assembly, Democrat Senate, and Democrat Governor would knowingly pass maps favoring Republicans. Petitioners had two experts testify and Respondents had five experts testify. However, it is not the number of experts that is determinative but the quality and credibility of the expert testimony.

The Respondents' expert attempted to discredit Trende's analysis by claiming that a large percentage of Trende's simulated maps are redundant in that the maps essentially show the same boundaries. It is claimed that as many as one half to three/fourths of the simulated maps are duplicative. Therefore, it was argued that Trende should have eliminated the duplicates as he did when addressing Maryland maps. Duplication or redundancy is claimed to be a common problem with this type of simulation. However, Trende ultimately did 10,000 simulated maps which could be reduced to 2,500 simulated maps if three quarters were redundant maps and were eliminated. Even under this analysis the enacted maps are the worst of 2,500 simulated maps, ie the worst of the worst.

Page 12 of 18

Case 1:22-cv-03534 Document 11 Filed 05/02/22 Page 16 of 24

What all the experts agreed upon was that the enacted congressional map would likely lead to the Republicans winning four Congressional seats. The Republicans currently hold 8 of the 27 congressional seats. A majority of the 5,000, 10,000 or 50,000 unbiased maps would have the Republicans winning less than four seats if you use 50.01% Democrats in a given district as the standard for which way a given district is likely to elect a Democrat or a Republican. Thus the Partisan Index used by the Respondents experts conclude the enacted maps favors Republicans because they are likely to receive four seats. However, both Trende and Respondents' expert, Jonathan Katz, testified that historically the Republicans win a district up to 52% Democrat and that incumbent Republicans enjoy an additional 3%, which means the districts would have to be at least 55% Democrats for the Democrats to actually win. The enacted maps gives the Democrats at least 55% in every district except the four that are Republican leaning. Obviously actual elections vary but as a general rule that is what the reliable historical data shows. What Trende's report shows is that the first four districts heavily lean toward the Republicans. See Trende's Gerrymandering Index (graphs pgs. 14 & 15 of the Expert Report dated February 14, 2021). However, in the enacted plans congressional seats 5 - 13 not only favor Democrats but show 55% or higher Democrats in those districts making them noncompetitive and virtually impossible for a Republican to win. However, in the "unbiased" sampling by Trende and Barber as few as 2 seats heavily favor Republicans, but in sample districts 3 - 13, while the Democrats were favored in those samples, their advantage was in most cases substantially less than 55% Democrat leaning and in many cases less than 52% Democrat leaning. That would mean these districts would be competitive and if historical data is accurate would likely result in several of those seats going to Republicans.

The Respondents' experts claim that the Gerrymandering Index should not be recognized by the court. The Petitioners cite <u>Szeliga v. Lamone</u>, C-02-CV-21-001816, a recent Maryland case (March 25, 2022) that recognized the Gerrymandering Index as proof that the maps were biased.

What is clear from the testimony of virtually every expert (Trende, Lavigna, Barber, and Katz) is that at least in the congressional redistricting maps the drawers packed Republicans into four districts thus cracking the Republican voters in neighboring districts and virtually guaranteeing Democrats winning 22 seats. In 5,000, 10,000 or 50,000 unbiased computer drawn maps there were several, and perhaps as many as 10 competitive districts. The enacted congressional map shows virtually zero competitive districts. Trende concludes and the court agrees that this shows political bias. Katz and Barber agree with Trende that creating districts with no competitive districts is a potential sign of political bias. However, both Katz and Barber conclude there is no bias since Republicans are likely to win four seats; and that four seats is higher than most of the projected wins assuming the Democrats win every district that is at least 50.01 % Democrat leaning which is what the Partisan Index is designed to depict.

The court finds that Trende's maps, and those drawn by Katz and by Barber, do not include every constitutional consideration. Katz and Barber testified they attempted to duplicate the maps drawn by Trende using the same variables used by Trende. However, none

Page 13 of 18

Case 1:22-cv-03534   Document 11   Filed 05/02/22   Page 17 of 24

of Respondents' experts attempted to draw computer generated maps using all the constitutionally required considerations. Katz said to do so would have significantly increased the time it would take to draw the maps. Both Katz and Barber thought that by including every constitutional consideration the maps would have been different, but they could not say how or by how much they would have differed. If they had done so and could thus demonstrate that the additional constitutional factors not considered in Trende's maps cause a representative sample that differed appreciably from Trende's sample then the court could have considered those maps against the enacted map to see whether or not the same political bias was shown. Since no such computer generated maps were provided to the court the court must use the evidence before it.

According to Rucho (supra.) the fundamental difficulty in formulating a standard to adjudicate whether or not partisan gerrymandering has occurred is for the court to determine what is "fair". Is fairness formulating a greater number of competitive districts? Whitford v. Gill, 218 F. Supp.3rd 837 (W.D. Wis 2016). Does fairness require as many safe seats for each party as possible? Davis v. Brademer, 478 U.S. 109 (1986). This court concludes that generating a map that significantly reduces the number of competitive seats is a clear sign of bias.

The court finds by clear evidence and beyond a reasonable doubt that the congressional map was unconstitutionally drawn with political bias in violation of Art. III §4(c)(5). One does not reach the worst of 2,500, 5,000, 10,000 or 50,000 maps by chance. Therefore, the court agrees with the Petitioners that the congressional map was unconstitutionally drawn with political bias in violation of Art. III §4(c)(5) of the New York Constitution.

The court will next consider the newly enacted senate map. The Petitioners presented credible evidence that this map also was gerrymandered. However, Todd Breitbart testified in-depth that many of the changes found between the 2012 enacted senate map and the 2022 enacted senate map were attempts by the legislature to correct malapportionment, and other constitutional deficiencies in the 2012 map. The court finds that testimony sufficiently credible. However, the court does not accept Breitbart's premise that the Republicans essentially gerrymandered the 2012 senate map since in 2012 the Assembly and Governorship were controlled by the Democrats and so the Republicans and Democrats had to work together to enact the maps. Therefore Petitioners could not show that the enacted 2022 senate map was drawn with political bias beyond a reasonable doubt. However, since this map was already struck down as void *ab initio* a new map will need to be drawn.

Having declared the recently enacted 2022 maps unconstitutional where do we go from here. It was clear from the testimony that not only is the 2012 congressional map not useable because New York State now only has 26 instead of 27 Congressional districts, but the 2012 senate map is also not useable because as a result of population shifts that map is now constitutionally malapportioned. Therefore, that leaves no maps. At this point in time, the candidates have been collecting signatures for over a month to get on the ballot for districts that

Page 14 of 18

no longer exist. The end of the signature gathering process will occur within a few days. Yet Petitioners urge the court to have the parties quickly submit new maps and create new election time-lines so that the election can proceed on properly drawn redistricting maps that are free of partisan bias. The Respondents contend it is too late in the election cycle to try to draft new maps and then hold elections based on the new maps.

The Respondents point out that the U.S. Supreme Court has long ruled that Congressional elections can proceed even under defective lines. Merrill v. Milligan, 142 S. Ct. 879(2022); Abbott v. Perez, 138 S. Ct. 2305 (2018); Wells v. Rockefeller, 394 U.S. 542 (1969). In Wells v. Rockefeller the court faced a similar time deadline when on March 20, 1968 the primary election was three months away and yet the court permitted the election based on the redistricting maps that were constitutionally infirm, rather than delay the primaries and redraw the redistricting maps. Therefore, the Respondents urge this years election to proceed under the unconstitutional maps.

The Petitioners urge the court to strike down these constitutionally infirm maps and have new maps prepared. This of course will require revision of the election schedule since candidates would not even know what district he/she would run in before most of the current deadlines would have expired. The Petitioners urge moving the primary back to as late as August 23, 2022. The Petitioners cite other states that have recently moved their primaries to a later date because of challenges to the redistricting maps. See, Harper v. Hall, 865 S.E.2d 301, 302 (N.C. 2021); In re 2022 Legislative Districting of the State of Maryland, No. COA-MISC-0025-2021 (Md. Mar. 2022).

This court is well aware that this Decision and Order is only the beginning of the process and not the end of the process. There will likely be appeals to the Appellate Division and the Court of Appeals in addition to what ever time it takes to draw new maps. Then once the maps are drawn the County Boards of Election need time to apply the new redistricting maps to the precincts within their respective borders.

On March 3, 2022 when the court initially denied Petitioners application to stay the election process the court was not at all sure that the Petitioners could overcome the extremely high hurdle of demonstrating the maps violated the constitution. Thus, the court did not see a substantial likelihood for ultimate success by the Petitioners. Therefore the request for a temporary stay was denied. The court was also unaware of the prior courts ruling with regard to not permitting new elections in Congressional races in 2023 even when the maps were found to be unconstitutional. Having now determined that the various redistricting maps are unconstitutional the court is still concerned about the relatively brief time in which everything would need to happen to draw new maps, complete the appellate review process, revise the election process guidelines, and give the county election commissioners time to do their jobs.

However, this court's deadline of April 4, 2022 to make a decision was set by law (60 days to render a decision) in order to allow time for elections under newly drawn maps.

Page 15 of 18

As the court sees it the drop dead date for sending out overseas military ballots is forty-five days before the November 8, 2022 general election. Thus, the ballots have to be finalized and mailed out no later than September 23, 2022. Between the primary election and that September 23rd date the votes have to be counted, the elections need to be certified, candidates need time to challenge election results, and the ballots need to be prepared. Thus, August 23, 2022 is the last possible date to hold a primary. An earlier August date would be preferred from the stand point of providing sufficient time from the holding of the primary to the completion of the November ballot. However, the same 45 day rule applies with regard to sending out overseas primary ballots. Thus, the primary ballots would have to be sent out no later than July 8, 2022. That only leaves about 100 days from today for the drawing of new maps, the candidates to gather signatures, the preparation of the primary ballots, the appellate review process, etc.

The court is mindful that in the Maryland case decided on March 25, 2022 that court threw out the recently enacted gerrymandered maps and ordered new maps to be drawn. This court finds that although it will be very difficult this court must require new maps to be drawn and the current maps are void and unusable. The court will leave it to the legislature and governor to develop new time frames for gathering signatures, how many signatures will be required to be on the ballot, whether signatures already gathered can be counted toward meeting the quota to appear of the ballot, etc.

N.Y. Constitution Art III §5 states as follows:

> "In any judicial proceeding relating to redistricting of congressional or state legislative districts, any law establishing congressional or state legislative districts found to violate the provisions of this article shall be invalid in whole or in part. In the event that a court finds such a violation the legislature **shall** have a full and reasonable opportunity to correct the law's legal infirmities." (Emphasis added)

Therefore, the Constitution requires the Legislature to be given another chance to pass maps that do not violate the Constitution. Part of the problem is these maps were void *ab initio* for failure to follow the constitutional process of having bipartisan maps presented by the IRC. The second problem was the Congressional map that was presented was determined to be gerrymandered. The Legislature could correct the gerrymander issue, but they can not correct the constructional failure to have IRC present bipartisan maps for Congressional, State Senate, and State Assembly Districts. Therefore, the court will require any revised maps generated by the Legislature to receive bipartisan support among both Democrats and Republicans in both the senate and the assembly. The maps do not have to be unanimously approved, but they must enjoy a reasonable amount of bipartisan support to insure the constitutional process is protected. This they will need to do quickly. In Maryland the court gave their legislature 5 days in which to submit appropriate new maps for the court to review. The court will give the legislature until April 11, 2022 (which is slightly more time than they took to prepare the

Page 16 of 18

enacted maps) to enact new bipartisan supported proposed maps that meet the constitutional requirements. This court will review those maps. If the maps do not receive bipartisan support or if no revised maps are submitted, then I will retain an expert at the States expense to draw new maps. Not only would the process be expensive it is possible that New York would not have a Congressional map in place that meets the Constitutional requirements in time for the primaries even with moving the primary date back to August 23, 2022.

NOW, therefore, upon consideration of all papers and proceedings heretofore had herein, and after due deliberation, it is

**ORDERED, ADJUDGED, and DECREED** the Petitioner are found to be in the zone of interest and therefore having standing to bring this action; and it is further

**ORDERED, ADJUDGED, and DECREED** that the Governor and Lt. Governor are necessary parties to this action; and it is further

**ORDERED, ADJUDGED, and DECREED** that the process used to enact the 2022 redistricting maps was unconstitutional and therefore void *ab initio*; and it is further

**ORDERED, ADJUDGED, and DECREED** that with regard to the enacted 2022 Congressional map the Petitioners were able to prove beyond a reasonable doubt that the map was enacted with political bias and thus in violation of the constitutional prohibition against gerrymandering under Article III Sections 4 and 5 of the Constitution; and it is further

**ORDERED, ADJUDGED, and DECREED** that the maps enacted by 2021-2022 N.Y. Reg. Sess. Leg. Bills S8196 and A.9039-A (as technically amended by A.9167) be, and are hereby found to be void and not usable; and it is further

**ORDERED, ADJUDGED, and DECREED** that the maps enacted by 2021-2022 N.Y. Reg. Sess. Leg. Bills S9040-A and A.9168 be, and are hereby found to be void and not usable; and it is further

**ORDERED, ADJUDGED, and DECREED** that congressional, state senate and state assembly maps that were enacted after the 2010 census are no longer valid due to unconstitutional malapportionment and therefore can not be used; and it is further

**ORDERED, ADJUDGED, and DECREED** that the legislation enacted in November, 2021 purporting to create a way to bypass the IRC is unconstitutional and in clear violation of the Peoples' express desire to not amend the Constitution to permit the Legislature to act in the event the IRC failed to submit maps; and it is further

**ORDERED, ADJUDGED, and DECREED** that the enacted legislation L. 2021 c. 633 §1 be and is hereby found to be void and not usable and shall be stricken from the books; and it

Page 17 of 18

is further

**ORDERED, ADJUDGED, and DECREED** that the Petitioners and others have been injured as a result of the unconstitutional enacted maps; and it is further

**ORDERED, ADJUDGED, and DECREED** that in order to grant appropriate relief the court hereby grants to Petitioners a permanent injunction refraining and enjoining the Respondents, their agents, officers, and employees or others from using, applying, administering, enforcing or implementing any of the recently enacted 2022 maps for this or any other election in New York, included but not limited to the 2022 primary and general election for Congress, State Senate and State Assembly; and it is further

**ORDERED, ADJUDGED, and DECREED** that the Legislature shall have until April 11, 2022 to submit bipartisanly supported maps to this court for review of the Congressional District Maps, Senate District Maps, and Assembly District Maps that meet Constitutional requirements; and it is further

**ORDERED, ADJUDGED, and DECREED** that in the event the Legislature fails to submit maps that receive sufficient bipartisan support by April 11, 2022 the court will retain a neutral expert at State expense to prepare said maps; and it is further

**ORDERED, ADJUDGED, and DECREED** that any request for attorneys' fees and costs is denied; and it is further

**ORDERED, ADJUDGED, and DECREED** that this Court retains jurisdiction to issue any and all further orders which shall be necessary to comply with the mandates set forth herein.

Dated: March 31, 2022

_____
Hon. Patrick F. McAllister
Acting Supreme Court Justice

ENTER

# EXHIBIT 2

STATE OF NEW YORK
SUPREME COURT : COUNTY OF STEUBEN

_____

Index No. E2022-0116CV

TIM HARKENRIDER, GUY C. BROUGHT,
LAWRENCE CANNING, PATRICIA CLARINO,
GEORGE DOOHER, JR., STEVEN EVANS, LINDA
FANTON, JERRY FISHMAN, JAY FRANTZ,
LAWRENCE GARVEY, ALAN NEWPHEW,
SUSAN ROWLEY, JOSEPHINE THOMAS, and
MARIANNE VOLANTE,

                                        Petitioners,

        -against-                                               PRELIMINARY ORDER

GOVERNOR KATHY HOCHUL, LIEUTENANT
GOVERNOR AND PRESIDENT OF THE SENATE
BRIAN A. BENJAMIN, SENATE MAJORITY LEADER
AND PRESIDENT PRO TEMPORE OF THE SENATE
ANDREA STEWART-COUSINS, SPEAKER OF THE
ASSEMBLY CARL HEASTIE, NEW YORK STATE
BOARD OF ELECTIONS, and THE NEW YORK STATE
LEGISLATIVE TASK FORCE ON DEMOGRAPHIC
RESEARCH AND REAPPORTIONMENT,

                                        Respondents.

_____

PRESENT: Hon. Patrick F. McAllister
                Acting Supreme Court Justice

        The Court of Appeals Opinion dated April 27, 2022 declared the recently enacted
Congressional and State Senate redistricting maps to be unconstitutional and further directed
this Court to have an independent special master develop both new Congressional and State
Senate maps. This court appointed Dr. Jonathan Cervas to serve as the special master. Based
on the current time pressure and after consulting with special master Cervas and the State Board
of Elections this court is issuing the following preliminary order with regard to when the
redistricting maps will be completed; when the primary for the Congressional and State Senate
will be held; and when the military and other overseas ballots will need to be mailed. A further
more detailed order will follow with regard to ballot access and other issues.

        This order will only pertain to the Congressional and State Senate primary elections. It
will be up to the Legislature to determine whether or not to continue the June primary for all

Page 1 of 2

other offices or whether the Legislature will want to change the currently scheduled June primary to coincide with the Congressional and State Senate primary.

NOW, therefore, upon consideration of all papers and proceedings heretofore had herein, and after due deliberation, it is

**ORDERED** that the new 2022 impartial redistricting maps for the Congressional and State Senate districts to be prepared by Special Master Dr. Jonathan Cervas will be available by May 20, 2022; and it is further

**ORDERED** that the 2022 primary for the Congressional and State Senate elections will be held on Tuesday, August 23, 2022; and it is further

**ORDERED** that the deadline for military and overseas ballots to be mailed will be July 8, 2022.

Dated: April 29, 2022

Hon. Patrick F. McAllister
Acting Supreme Court Justice

ENTER

Page 2 of 2